IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NUMBER 13-CR-0074-001 |
| v. | : | |
| SHAWN SISCO | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

**I.    INTRODUCTION**

Defendant Shawn Sisco was a federal income tax return preparer who, during the years 2006 through 2009, prepared approximately 28 fraudulent tax returns on behalf of her clients. In order to obtain refunds for her clients in amounts to which they were not entitled to receive, the defendant included fictitious itemized deductions on the returns. The inflated deductions consisted of: medical and dental expenses; charitable contributions; mortgage interest; property tax expenses; cell phone expenses; clothing and shoe expenses; and laundry and maintenance expenses. Following a trial and a relatively short period of deliberation, a jury convicted the defendant on all of the counts in the indictment.[1]

**II.    DEFENDANT'S BACKGROUND**

Defendant Shawn Sisco is a thief. On December 19, 2007, the defendant pled guilty to theft by unlawful taking in the Montgomery County Court of Common Pleas (Docket Number 2890-2007). She was sentenced to 7 years of probation and ordered to pay $65,475.13. At the time that she committed the crimes for which she was convicted in this court, the defendant was still serving her probationary sentence in the above matter. Taken together -- the defendant's

---

[1]   The original indictment contained 30 counts. Counsel for the United States move the Court to dismiss two of the counts which left 28 counts.

prior conviction and her criminal conduct in the case at bar -- is positive proof that the defendant has no respect for the law.  For reasons that are more fully explained below, a reasonable and just sentence would be a sentence that is within the Federal Advisory Sentencing Guidelines.

### III. SENTENCING CALCULATION

#### A. Statutory Maximum Sentence

The maximum statutory sentence for a violation of Title 26, United States Code, Section 7206(2) is 3 years of imprisonment per count of conviction.  The maximum fine is $250,000 per count of conviction.[2]  The defendant was convicted of 28 counts of violating 26 U.S.C. Section 7206(2).

**TOTAL MAXIMUM SENTENCE**:  84 years of imprisonment, a fine of $7 million dollar, a special assessment of $2,800 and 1 year of supervised release.

#### B. Sentencing Guidelines Calculation

The United States Probation office calculated the defendant's advisory guideline range as 30 to 37 months.  See PSR @ paragraph 69.

### IV. SENTENCING RECOMMENDATION

The criminal tax system must be understood in the context of the role it plays in the overall tax system.  The fundamental purpose of the any tax system is to raise money for the Government.  Criminal and civil sanctions exist to fortify the better instincts of taxpayers in order to safeguard the revenues essential to the government.  The Supreme Court affirmed the importance of taxation to the maintenance of our society in *Compania General de Tabacos de Filipinas v. Collector of Internal Revenue*, 275 U.S. 87, 100 (1927) (dissenting opinion) when one of the justices observed that "taxes are the price we pay for a civilized society.

---

[2]  Under 18 U.S.C. Section 3571(b)(3), the fine which is applicable to the defendant is $250,000 per count of conviction even though 26 U.S.C. Section 7206(2) states that the fine is $100,000.  Section 18 U.S.C. Section 3571 is the alternative minimum statute which controls in this case.

## V.   ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. Section 3553(a) suggests that a sentence of substantial imprisonment should be imposed upon the defendant.  In addition to the statutory factors, two transcendental considerations are at play in this case (1)  the defendant committed the crimes at bar while under supervision in the state court system and (2) the defendant's callous attitude toward the law strongly support the notion that a significant period of incarceration is warranted in this case.[3]

The Supreme Court has declared:  "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 128 S. Ct. 586, 596 (2007).  Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal crimes.

### 1.   Nature and Circumstance of the Offense

The first statutory sentencing factor concerns the nature and circumstances of the offense and the history and characteristics of the defendant. The overriding sentencing objectives in this case are punishment and general deterrence to other "would be tax preparers" who, as we are appearing today in Court, may be gearing up for the 2013 tax season to commit the same type of tax fraud for which the defendant stands convicted if history is a guide to the future.  As such, the only antidote available to the government to deter this type of conduct is the prosecution, conviction and, hopefully, the incarceration of return preparers who prepare return false returns for the purpose of either gaining a reputation as a person who can secure a large refund or, in some cases, splitting the bogus refund with a filer.  Even more galling, though not at issue in

---

[3]  During an interview with two agents, the defendant is alleged to stated in response to her theft of government funds, "well, it's just the government," as though  there is nothing wrong with stealing money from the government. Only a significant period of time in jail may have an impact upon the defendant's attitude toward law abidiness.

this case, are individuals who literally allow the names and social security numbers of their children to be used by other filers to be used to cheat the government out of $500 or more dollars! In some circles, though perhaps unknown by the general public, this type of conduct is a "laughing matter."

Despite any pleas of poverty or family hardship that may be offered at sentencing, defendant Sisco, by her own admission, stated that she earned between $80,000 and $150,000 during the tax season, a time period that lasted from January 1st through April 15 of each year. In other words, the defendant earned <u>more</u> money from a tax fraud scheme during a four month period time than many individuals earned during a year.

Tax fraud is, at its heart, a crime of theft. The victims are the honest taxpayers who work every day, abide by the rules, and pay their fair share as the law requires. Defendant Sisco was not forced into committing tax fraud. She was motivated by greed. Her criminal conduct cheated the taxpayers out of their hard-earned money. Under the circumstances, a substantial sentence of incarceration is reasonable, fair and just.

**2.   The Need for The Sentence Imposed**

The Federal Tax Enforcement Program is designed to protect the public interest in preserving the integrity of America's self-assessment tax system through vigorous enforcement of the internal revenue laws. The purpose of a criminal tax prosecution is to expose the wrongdoer, thereby deterring other potential tax violations. As such, the most effective deterrent to would-be violators is a successful prosecution coupled with a sentence commensurate with the gravity of the offense.

When the size of the tax filing public is considered, the number of individuals who are successfully prosecuted for the tax fraud crime of failure to file is small which one of the easier

tax crimes to prove.  For example, in fiscal year 2005, the IRS's Criminal Investigation Division initiated 549 non-filing investigations.  They resulted in 316 indictments for which 280 taxpayers were sentenced for an average prison term of 34 months.[4]  As the Sisco trial demonstrated, criminal tax prosecutions for filing false tax returns and tax evasion are "resource-[5]intensive undertakings."  Thus, when a defendant is convicted, that person's sentence should reflect the undertaking necessary to secure the conviction and the impact that the conviction will have on the general public.  These facts strongly support the government's recommendation that the Court should impose a sentence upon the defendant that is within the guideline range.

### 3. The Kinds of Sentences Available

Statutorily, the defendant maximum prison exposure is 87 years of incarceration and a fine of $7 million.  The defendant's advisory guideline range 30 to 37 months.  A sentence within the guideline range would be reasonable under all of the circumstances at issue here, particularly in view of the defendant's prior criminal record.

### 4. Educational or Vocational Training

The government is not aware of a need in this case to adjust the defendant's sentence in order to provide her with needed educational or vocational training, medical care, of other correctional treatment in the most effective manner.  18 U.S.C. Section 3553(a)(2)(D).

### 5. The Need To Avoid Disparities

While the federal sentencing guidelines are only advisory, the United States Department of Justice's Tax Division has had a long standing policy, even before the guideline became effective, to strive for uniformity in criminal tax prosecutions and sentencing because tax

---

[4]  See Theodore M. David, *The Tax Non-Filer Public Enemy Number One?,* Practical Tax Lawyer, Spring 2007 at 7,8.

[5]  See paragraphs 28 and 29 and paragraph 62.  These paragraphs confirm the government's initial characterization of  the defendant as a thief.

crimes potentially affect more American workers than any other type of crime.  For this reason, a tax preparer who commits a tax crime in Los Angeles should receive similar type punishment that is imposed upon a tax preparer who commits a tax fraud crime in Philadelphia, in particularly, where the case at issue concerns the preparation of materially false tax returns. While sentencing is solely a matter that is within the province of the Court, the goal of uniformity is criminal tax sentencing can be most effective, as a deterrence, if uniform sentences are imposed for uniform crimes.

### 6. Restitution

Restitution is a routine element of white collar sentencing in both state and federal courts, in part because of the ubiquity of victims' rights provision in state constitutions and criminal codes.  Restitution may be imposed when authorized by statute and is often included as a condition of probation, or supervised release.

The provisions governing restitution in federal criminal cases are collected in 18 U.S.C. Section 3663 and 3663A.  First established by the Victim and Witness Protection Act of 1982, 18 U.S.C. Section 3663(c)(1) provide *discretionary* authority to order restitution to victims of most federal crimes.

The statute authorizes restitution for four categories of costs:  (1) the value of lost property; (2) the expenses of recovering from bodily injury such as medical expenses; (3) funeral costs; (4) lost income and necessary child care, transportation; and (4) other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.  See 18 U.S.C. Section 3663(b)(4).

Section 3663A, added the Mandatory Victims Restitution Act of 1996,   See Pub.L. No. 104-132, Section 204, 110 Stat. 1214, 1227 ("MVRA"), to the government's restitution arsenal.

The MVRA *requires* that restitution for the same four categories of costs be included in sentences for certain offense, including property crimes. Tax crimes prosecuted under Title 26 are not among the crimes for which mandatory restitution is required although the Court has the legal authority to order restitution. So that a defendant cannot profit by their "ill-gotten gains," restitution should be imposed as a matter of course in tax cases even though it is not required under the MVRA.

Government counsel will present testimony at the sentencing regarding the amount of restitution that counsel contends the defendant should be required to pay the Internal Revenue Service as an element of her sentence. The imposition of restitution will also serve a significant deterrence purpose if imposed upon the defendant because an order of restitution is likely to prevent the defendant from committing similar crimes in the future.

## VI.    CONCLUSION

For all of the foregoing reasons, a just, reasonable and appropriate sentence in this case would be one that is within the advisory guideline range coupled with the requirement that the defendant make restitution to the government. The government will never be able to prosecute every individual who commit tax fraud. There are not enough investigative agents, prosecutors, judges or resources in general to accomplish the foregoing. It is for this reason that deterrence, which can best be accomplished by jail time, is so significant in criminal tax cases.

Respectfully submitted

ZANE DAVID MEMEGER
UNITED STATES ATTORNEY

/Floyd J. Miller

_____

Floyd J. Miller
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Government's Sentencing Memorandum was electronically filed with the clerk of court for the United States District Court, Eastern District of Pennsylvania, and counsel for the defendant at the following address by first class United States mail, postage prepaid:

>Mr. Nino V. Tinari, Esquire
>Attorney & Counselor at Law
>1528 Walnut Street
>4th Floor
>Philadelphia, PA 19102

>/Floyd J. Miller
>_____
>Floyd J. Miller
>Assistant United States Attorney